# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MEDURI FARMS, INC.,** | Case No. 3:24-cv-01431-IM |
| Petitioner, | **OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| v. | |
| **U.S. SMALL BUSINESS ADMINISTRATION,** | |
| Respondent. | |

Sasha A. Petrova and Steven M. Wilker, Tonkon Torp LLP, 888 SW Fifth Avenue, Suite 1600, Portland, OR, 97204. Attorneys for Petitioner.

Ariana N. Garousi and Benjamin T. Hickman, Assistant United States Attorneys, and William M. Narus, Acting United States Attorney, United States Attorney's Office, District of Oregon, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Attorneys for Respondent.

**IMMERGUT, District Judge.**

Before this Court are cross-motions for summary judgment filed by Petitioner Meduri

Farms, Inc. ("Meduri"), ECF 19, and Respondent United States Small Business Administration

("SBA"), ECF 22. Meduri petitions this Court to vacate the SBA's final decision denying

Meduri's request for forgiveness of its Paycheck Protection Program Second Draw Loan ("PPP2

PAGE 1 – OPINION & ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Loan"). Meduri argues that the SBA's decision is contrary to statutory text in violation of the Administrative Procedure Act ("APA"). Petitioner Meduri's Motion for Summary Judgment ("Meduri's MSJ"), ECF 19 at 2–3. The SBA argues that its denial of Meduri's application for loan forgiveness was in accordance with controlling federal law and not arbitrary or capricious. Respondent SBA's Motion for Summary Judgment ("SBA's MSJ"), ECF 22 at 2.

The central issue in this case is whether the SBA erroneously determined Meduri's eligibility for the PPP2 loan by averaging the number of employees Meduri had in the twelve calendar months preceding its loan application, as established in 13 C.F.R. § 121.106. This Court concludes that under the Small Business Act's statutory and regulatory scheme, which governed Meduri's PPP2 loan, the SBA correctly calculated Meduri's number of employees using the method in 13 C.F.R. § 121.106. This Court accordingly grants summary judgment to the SBA.

## LEGAL STANDARDS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under the APA, a court shall set aside reviewable agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency's construction of a statute is reviewed de novo. *Grand Canyon Univ. v. Cardona*, 121 F.4th 717, 723 (9th Cir. 2024) (citing *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2261 (2024)). A court "must exercise independent judgment" when interpreting a statute, but the court may "seek aid from the interpretations of those responsible for implementing particular statutes." *Loper Bright*, 144 S. Ct. at 2262. An agency's "legal error requires that its decisions be set aside." *Grand Canyon Univ.*, 121 F.4th at 726.

But if an agency "construed the law correctly," then a court reviews the agency's "application of the law to the facts of the case under the APA's deferential standards." *Id.* at 723.

PAGE 2 – OPINION & ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Under this deferential arbitrary-and-capricious standard, the agency action need only be "reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423  (2021). The court "simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.* The court reviews the agency's factual findings for substantial evidence and "must uphold such findings if 'a reasonable mind might accept this particular evidentiary record as adequate to support the agency's conclusion.'" *Grand Canyon Univ.*, 121 F.4th at 723 (brackets omitted) (quoting *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999)).

## BACKGROUND

### A.  Statutory Background

Under the Small Business Act, the Small Business Administration provides financing to "small business concerns" primarily by issuing private "Section 7(a) loans" pursuant to 15 U.S.C. § 636(a). *See In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1248 (11th Cir. 2020). The SBA "is empowered to make loans either directly or in cooperation with banks or other financial institutions." 15 U.S.C. § 636(a)(20)(A). And Congress gave the SBA authority to "establish general policies" that "govern the granting and denial of applications for financial assistance." *In re Gateway,* 983 F.3d at 1248 (quoting 15 U.S.C. § 633(d)).

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to ameliorate the economic effects of the COVID-19 pandemic. Pub. L. 116–136, 134 Stat. 281 (2020). The CARES Act established the Paycheck Protection Program ("PPP") by amending Section 7(a) of the Small Business Act. *See* 15 U.S.C. § 636(a)(36)(B) (providing that the SBA may guarantee PPP loans "under the same terms, conditions, and processes as a loan made under this subsection"). The PPP temporarily authorized the SBA to guarantee forgivable loans to small businesses affected by the pandemic.

PAGE 3 – OPINION & ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

*Id.* § 636(a)(36). The CARES Act permitted borrowing businesses to use PPP loans to cover employees' payroll costs or a business's operating costs such as mortgage, rent, or utility payments. *Id.* § 636(a)(36)(F)(i). An eligible business was one that "employs not more than" 500 employees, with higher employee limits for certain specific industries. *Id.* § 636(a)(36)(D)(i).

The CARES Act directed the SBA to issue emergency rules implementing the PPP. 15 U.S.C. § 9012. The SBA issued multiple interim final rules ("IFRs") that governed the PPP. *See PPP lender information*, U.S. Small Business Admin., https://perma.cc/JA4E-PYVA (archived June 9, 2025). The SBA also provided guidance in the form of periodically updated answers to frequently asked questions. *See FAQ for PPP Borrowers and Lenders*, U.S. Small Business Admin., https://perma.cc/7U6A-87R2 (archived June 9, 2025).

On December 27, 2020, Congress enacted the Economic Aid to Hard-Hit Small-Businesses, Nonprofits, and Venues Act ("Economic Aid Act"). This Act authorized the SBA to extend a second round of PPP loans, known as the Paycheck Protection Program Second Draw ("Second Draw" or "PPP2") loans, to eligible small businesses. *See* 15 U.S.C. § 636(a)(37)(B). Eligible small businesses could apply for up to $2 million in PPP2 loans to cover business costs. 15 U.S.C. § 636(a)(37)(C). Eligibility for Second Draw loans was limited to "any business concern" that (1) "employs not more than 300 employees" and that (2) "had gross receipts" demonstrating at least a 25% revenue reduction in 2020 relative to 2019. *Id.* § 636(a)(37)(A)(iv).

In January 2021, the SBA published IFRs implementing the Economic Aid Act amendments to the PPP. *See* 86 Fed. Reg. 3692 (Jan. 14, 2021) (to be codified at 13 C.F.R. pts. 113, 120, and 121) (incorporating the Economic Aid Act amendments to the PPP); 86 Fed. Reg. 3712 (Jan. 14, 2021) (to be codified at 13 C.F.R. pts. 120 and 121) (further implementing the Economic Aid Act). Consistent with section 636(a)(37)(A)(iv), these IFRs explained that a

PAGE 4 – OPINION & ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

borrower is eligible for a Second Draw loan "only if it has 300 or fewer employees and experienced a revenue reduction in 2020 relative to 2019." *See* 86 Fed. Reg. at 3713. The Economic Aid Act also mandated that if a business concern was eligible for a PPP2 loan, then its PPP2 loan "shall be eligible for forgiveness of indebtedness" under the same terms that governed PPP loan forgiveness under the CARES Act. 15 U.S.C. § 636(a)(37)(J)(ii).

## B. Factual Background[1]

On January 26, 2021, Meduri Farms, a dried fruit business in Oregon, applied to KeyBank for a $2 million PPP2 loan. Meduri's MSJ, ECF 19 at 6; Administrative Record ("AR") 4–10. On its PPP2 loan application, Meduri listed that it had 292 employees. AR 4. On January 29, 2021, KeyBank approved Meduri's PPP2 loan, AR 24, 36, and the loan proceeds were disbursed to Meduri on February 11, 2021. AR 11.

On June 13, 2022, Meduri applied for forgiveness of its PPP2 loan to KeyBank. AR 11–20. Meduri's forgiveness application stated that it had 292 employees at the time of the loan application and 332 employees at the time of the loan forgiveness application. AR 11. KeyBank processed Meduri's application and submitted it to the SBA for final approval. AR 1183.

On July 20, 2023, KeyBank forwarded Meduri a letter from the SBA that stated the agency was "considering recommending a Full Denial due to [Meduri] exceeding the size standard of 300 employees for Second Draw PPP loans." AR 24–25. The letter also requested that Meduri send, among other things, all W-2s issued for 2020 and "the average employee head count per pay period for" Meduri and its affiliates "for the preceding 12 months to the application date or for the time frame that was utilized to calculate the loan origination." AR 25.

---

[1] These facts, drawn from the Administrative Record, ECF 14 and ECF 16, are not in dispute.

Meduri responded on August 7, 2023, providing the requested information and documentation. AR 27–29, 229–49, 387–98.

On September 7, 2023, KeyBank sent Meduri the SBA's decision denying Meduri's loan forgiveness application. AR 1–2. The SBA found that Meduri was ineligible for the PPP2 loan that it had received because "[t]he borrower exceeds the maximum allowable number of 300 employees." AR 1–2. The SBA therefore determined "forgiveness in the amount of $0.00 is appropriate" and denied Meduri loan forgiveness in full. AR 1.

**C. Procedural History**

On October 6, 2023, Meduri petitioned for review of the SBA's loan review decision before the SBA Office of Hearings and Appeals ("OHA"). AR 43–61. Meduri argued that the SBA's decision (1) failed to articulate the basis for denying loan forgiveness, (2) was arbitrary and capricious and contrary to federal law in violation of the APA, and (3) was based on non-binding SBA guidance in violation of the SBA's statutory authority. AR 43–61. As relevant here, Meduri argued that the SBA's decision incorrectly concluded that eligibility for a PPP2 loan is determined by averaging the number of employees a business employed in the 12 months preceding the loan application, rather than using the number of employees as of the most recent pay period. AR 52–59. Meduri argued that because it had 292 employees at the time of its loan application based on its most recent pay period, Meduri qualified for its PPP2 loan. AR 53–54.

On May 3, 2024, the OHA Administrative Law Judge ("ALJ") issued a decision affirming the SBA's denial of forgiveness to Meduri. AR 1182–93. The ALJ concluded that the SBA articulated a sufficiently specific basis for its decision but that Meduri's remaining arguments raised issues beyond the ALJ's authority to decide. AR 1190. On May 13, 2024, Meduri petitioned for reconsideration of the ALJ's decision. AR 1194–1212. On June 28, 2024,

the ALJ issued a decision denying Meduri's petition for reconsideration and reaffirming the denial of loan forgiveness. AR 1213–20.

On August 28, 2024, Meduri filed the instant petition for review of the SBA's decision denying Meduri's request for forgiveness of the PPP2 loan. Petition for Review, ECF 1. Meduri and the SBA filed cross motions for summary judgment. Meduri's MSJ, ECF 19; SBA's MSJ ECF 22.

## DISCUSSION

The central issue in these cross motions for summary judgment is whether the SBA's decision to deny Meduri's application for loan forgiveness was consistent with the controlling statute governing PPP2 loan eligibility. Meduri argues that the plain text of the contested statute mandates that a business is eligible for a PPP2 loan if it has fewer than 300 employees at the time of its loan application. The SBA argues that the statutory and regulatory framework governing PPP2 loans establishes that a business's number of employees is controlled by a preexisting regulation, 13 C.F.R. § 121.106(b)(1), which calculates the business's number of employees by averaging the number of employees over the preceding twelve months.

As explained below, this Court agrees with the SBA that the agency correctly applied 13 C.F.R. § 121.106(b)(1) to calculate Meduri's number of employees when it applied for a PPP2 loan. While neither the CARES Act nor the Economic Aid Act provides a method to calculate a business's number of employees, both statutes authorize the SBA to guarantee PPP loans "under the same terms, conditions, and processes" as Section 7(a) loans. And since Section 7(a) loan eligibility is governed by 13 C.F.R. § 121.106(b)(1), the SBA complied with the statute in using this regulation to calculate Meduri's number of employees to evaluate its PPP2 loan eligibility.

## A. Statutory Interpretation

This Court begins its statutory analysis "with the text of the statute and with the presumption that Congress intended that the words used be given their plain and ordinary meaning." *United States v. Pacheco*, 977 F.3d 764, 767 (9th Cir. 2020). Importantly, when courts discern the ordinary meaning of a statute, they "do not read the words of [the statute] in a vacuum." *Idaho Conservation League v. Bonneville Power Admin.*, 142 F.4th 636, 642 (9th Cir. 2025). Rather, "[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Id.* (brackets in original) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

In this case, the disputed statutory language provides that a business is eligible for a PPP2 loan if, in addition to meeting certain revenue requirements, it "employs not more than 300 employees." 15 U.S.C. § 636(a)(37)(A)(iv)(I)(aa). Meduri asks this Court to conclude that the use of "employs" in the present tense demonstrates that Congress intended the calculation of employees to be based on a business's number of employees at the time of its loan application, as captured in its most recent pay period. But to accept Meduri's argument would be to read the statutory text "in a vacuum" and ignore "the overall statutory scheme" governing PPP loans. *Idaho Conservation League*, 142 F.4th at 642.

As the SBA explains, Meduri ignores that Congress did not pass the CARES Act and the Economic Aid Act as standalone statutes. Rather, when enacting these statutes that created the PPP, Congress amended Section 7(a) of the Small Business Act and provided that "[e]xcept as otherwise provided in this paragraph, the [SBA] may guarantee covered loans under the same terms, conditions, and processes as a loan made under" Section 7(a). 15 U.S.C. § 636(a)(36)(B); *see id.* § 636(a)(37)(B) (same). The PPP therefore "was not created as a standalone program but was added into the existing § 7(a) program, which subjects it to existing conditions and

regulations" that govern Section 7(a) loans in general. *Pharaohs GC Inc. v. U.S. Small Bus. Admin.*, 990 F.3d 217, 227 (2d Cir. 2021) (quoting *In re Gateway*, 983 F.3d at 1256).

And critically, a Section 7(a) implementing regulation already established a mechanism to calculate a business's number of employees. *See* 13 C.F.R. § 121.106 (2020) ("How does SBA calculate number of employees?"). At the time of Meduri's PPP2 loan application, this regulation specified that to determine a business concern's number of employees, "[t]he average number of employees of the concern is used . . . based upon numbers of employees for each of the pay periods for the preceding completed 12 calendar months." *Id.* § 121.106(b)(1).[2] This regulation thus governed how to calculate the number of employees of PPP2 loan applicants at the time of their loan applications. To hold otherwise would be to ignore the SBA's express statutory authority to make PPP2 loans subject to "the same terms, conditions, and processes" as Section 7(a) loans. 15 U.S.C. § 636(a)(37)(B); *see In re Gateway*, 983 F.3d at 1256 ("[W]e presume that Congress is aware of existing law when it passes legislation." (brackets in original) (quoting *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 169 (2014))).

Therefore, Meduri's textual arguments cannot overcome the controlling effect of 13 C.F.R. § 121.106. Put another way, Meduri is correct that the Economic Aid Act's "300-employee limit refers to the *number of employees* at the time of the loan application." Meduri's MSJ, ECF 19 at 16 (emphasis added). But Meduri's argument ignores that a governing regulation provides that the "number of employees" at the time of its loan application is equal to

---

[2] In 2022, pursuant to statutory mandate, the SBA changed its method to calculate "number of employees" from taking the average over the previous twelve months to taking the average over the previous twenty-four months. 13 C.F.R. § 121.106 (2022); *see* National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 863(a)(2)(B), 134 Stat. 3388, 3784 (2021). This change is not relevant to this case, and all citations to 13 C.F.R. § 121.106 are to the version in effect at the time of Meduri's PPP2 loan application in 2021.

its average number of employees in the preceding year. *See* 13 C.F.R. § 121.106. Likewise, when the loan forgiveness application requests that Meduri provide its "total number of employees . . . at the time of the PPP loan application," AR 15, this "number of employees" at the time of the loan application is to be determined by the same regulation that governs all Section 7(a) loans for calculating "number of employees."

Meduri "does not dispute that PPP loans are part of the 7(a) program." Meduri's Reply, ECF 23 at 1. Instead, Meduri contends that through the CARES Act and Economic Aid Act, Congress "expanded the availability of loans to businesses that would not otherwise qualify under the existing regulatory framework." Meduri's Reply, ECF 23 at 1. Meduri is correct—and the SBA agrees—that with respect to certain requirements, "the CARES Act relaxes (or expands) the typical § 7(a)" eligibility criteria. *In re Gateway*, 983 F.3d at 1249; *see* SBA's Reply, ECF 24 at 2–3. For example, Congress made nonprofit organizations eligible to receive PPP loans even though they previously were ineligible to receive Section 7(a) loans.  *See* SBA's Reply, ECF 24 at 3 (citing 15 U.S.C. § 636(a)(36)(D)(i), (37)(B)). And as another example, Congress simplified the size requirements for a business to be eligible for PPP loans. *Compare* 13 C.F.R. § 121.201 (providing different size requirements for SBA loan eligibility based on a business's industry and either the business's number of employees or its annual revenue), *with* 15 U.S.C. § 636(a)(37)(A)(iv) (establishing a singular size requirement for PPP2 loan eligibility across all industries based solely on whether a business "employs not more than 300 employees").

But Meduri is incorrect that the PPP expanded the availability of loans by changing *how* the SBA calculates a business's number of employees. Meduri's argument hinges on Congress's use of the term "employs" in the present tense, rather than "employed" in the past tense. *See* Meduri's MSJ, ECF 19 at 12–15. According to Meduri, the present tense demonstrates that

Congress intended the calculation of employees to be based on a business's number of employees at the time of the loan application by looking to the business's most recent pay period. Meduri's MSJ, ECF 19 at 12. In other words, Meduri argues that "[b]y making a business eligible for a PPP2 loan so long as it '*employs* not more than 300 employees,' Congress intended to override the default criteria in 13 C.F.R. 121.106." Meduri's Reply, ECF 23 at 7.

Meduri's argument fails because there is no support from the statutory text that Congress intended to nullify the preexisting method for determining a business's number of employees under 13 C.F.R. § 121.106. While the statute certainly sets a new 300-employee cap on the *number* of employees of an eligible business, it does not change how the SBA *calculates* the business's number of employees. As noted above, courts "presume that Congress legislates against the backdrop of existing law," and "the context in which Congress created the [PPP] included longstanding regulatory limits on SBA loan eligibility." *Pharaohs GC*, 990 F.3d at 227. These longstanding regulatory limits included the SBA's regulation to calculate a business's number of employees based on taking a twelve-month average, which remained in place from 1996 to 2022. *See* Small Business Size Standards, 61 Fed. Reg. 3280, 3288–89 (Jan. 31, 1996) (to be codified at 13 C.F.R. pt. 121). It would make little sense to read § 636(a)(37)(A)(iv)(I)(aa), which only states "employs not more than 300 employees," as implicitly displacing this longstanding regulation that provides for how to calculate a business's "number of employees." *See U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 977 (9th Cir. 2019) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provision—it does not, one might say, hide elephants in mouseholes.'" (ellipses in original) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001))).

PAGE 11 – OPINION & ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

For the same reasons, Meduri's argument predicated on the SBA's January 2021 Interim Final Rule ("IFR") fails. The IFR mirrors the statute in providing that a business is eligible for a PPP2 loan if, among satisfying other requirements, the business "employs not more than 300 employees." 86 Fed. Reg. at 3717. Meduri argues that the IFR's use of "employs" in the present tense further supports its desired reading of the statute. Meduri's MSJ, ECF 19 at 15–16. But like the statute, the IFR does not specify how the SBA calculates a business's number of employees. And again, Meduri's reliance on the present tense of "employs" does not override the controlling effect of 13 C.F.R. § 121.106, which already specifies how to calculate the number of employees that a business "employs" for purposes of Section 7(a)—and thus PPP2—loan eligibility.

Meduri also contends that the ALJ erred in relying on a Frequently Asked Question ("FAQ") that provided guidance on how to calculate maximum loan amounts. *See* Meduri's SMJ, ECF 19 at 17–21. The ALJ referenced the FAQ while rejecting Meduri's argument that the SBA failed to articulate the specific basis for denying its loan forgiveness application. *See* AR 1190–92. As discussed above, the SBA's conclusion that Meduri "exceed[ed] the maximum allowable number of 300 employees" was in accordance with law. AR 1. Therefore, the only issue here is whether the ALJ's determination that the SBA had articulated a specific basis was arbitrary and capricious. *Grand Canyon Univ.*, 121 F.4th at 723. To the extent the ALJ erred in pointing to the FAQ as "[a]dditional[] guidance" for Meduri to calculate its employee headcount, AR 1191, the error does not undermine the remainder of the ALJ's decision that "reasonably considered the relevant issues and reasonably explained the decision." *Prometheus Radio Project*, 592 U.S. at 423 . The ALJ pointed to the specific basis that the SBA provided to Meduri (exceeding 300 employees), substantial evidence in the administrative record supporting this basis, and the SBA's citation to the IFR as legal authority. *See* AR 1190–91. In short, the ALJ's

decision was "reasonable and reasonably explained" and therefore not arbitrary and capricious. *Prometheus Radio Project*, 592 U.S. at 423.

*    *    *

In sum, this Court finds that the SBA's calculation of Meduri's number of employees by averaging the number of employees over the preceding twelve months was consistent with the statute, 15 U.S.C. § 636(a)(37)(A)(iv), because it complied with the preexisting regulation for calculating a business's number of employees, 13 C.F.R. § 121.106, which applies to PPP2 loans. Meduri is thus incorrect that the SBA "retroactively" applied 13 C.F.R. § 121.106 to find that it was ineligible for a PPP2 loan. Meduri's MSJ, ECF 19 at 2. The regulation was in effect at the time of Meduri's PPP2 loan application, and it governed Meduri's "number of employees." It is undisputed that by applying this regulation, Meduri was ineligible for a PPP2 loan because it exceeded 300 employees. *See* AR 1, 503–04; Meduri's MSJ, ECF 19 at 8 ("reflecting an average of 304 total employees in Q4 2020, and an average of 330.93 total employees in Q1-3 2020"); SBA's MSJ, ECF 22 at 20–21, 20 & n.4 ("Meduri Farms and its affiliate CinJoe employed 324.625 employees in 2020."). Therefore, the SBA's decision finding Meduri ineligible for a PPP2 loan was in accordance with law and not otherwise arbitrary or capricious under the APA.[3]

---

[3] While the parties' cross-motions were pending, this Court requested supplemental briefing on what notice the SBA needed to provide a PPP loan applicant with respect to how the agency calculates the applicant's number of employees. Order Requesting Supplemental Briefing, ECF 25. As discussed above, a preexisting regulation governing PPP loans, 13 C.F.R. § 121.106, dictated how the SBA calculates an applicant's number of employees for PPP loan qualification purposes and thereby provided fair notice to applicants. Moreover, 13 C.F.R. § 121.106 specified a clear method for calculating a business's number of employees that gives "a person of ordinary intelligence fair notice" regarding how the SBA determines the business's number of employees. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). Therefore, no Due Process concerns arise from the SBA's application of 13 C.F.R. § 121.106.

## CONCLUSION

Respondent SBA's Motion for Summary Judgment, ECF 22, is GRANTED. Petitioner Meduri's Motion for Summary Judgment, ECF 19, is DENIED. The SBA's decision denying Meduri's application for loan forgiveness is upheld, and Meduri's Petition for Review, ECF 1, is DENIED.

**IT IS SO ORDERED.**

DATED this 11th day of September, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge